# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTINE TROMBLEY, | Civil No. 10-3089 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| | **AND ORDER ON MOTION FOR** |
| SUNTRUST MORTGAGE, INC., | **SUMMARY JUDGMENT** |
| Defendant. | |

Jane N. Holzer and Timothy L. Thompson, **HOUSING PRESERVATION PROJECT**, 570 Asbury Street, Suite 105, St. Paul, MN  55104, for plaintiff.

Brent R. Lindahl, **FULBRIGHT & JAWORSKI LLP**, 80 South 8th Street, Suite 2100, Minneapolis, MN 55402, for defendant.

Christine Trombley brings this action against SunTrust Mortgage, Inc. ("SunTrust"), the originator and servicer of her home loan.  After receiving a home loan from SunTrust, Trombley fell behind on her payments and SunTrust ultimately referred her account to commence foreclosure.  Trombley asserts that SunTrust violated the law by (1) failing to verify her ability to pay the loan as required by Minnesota Statutes, Chapter 58, (2) violating her rights under the Truth in Lending Act ("TILA") by providing inconsistent disclosures, and (3) committing breach of contract by failing to analyze or provide certain loss mitigation options to her after she was unable to make her loan payments.[1]  SunTrust moves for summary judgment on each of Trombley's claims.

---

[1] Trombley also brought other claims against SunTrust, but Trombley agrees that the Court should dismiss them.  Accordingly, the Court will dismiss these claims.

The Court finds that Trombley has failed to properly plead her breach of contract claim and that SunTrust adequately verified Trombley's income under Chapter 58 because it followed HUD criteria. There remains a genuine question of material fact regarding Trombley's TILA claim, however, because SunTrust may have provided Trombley with unclear disclosures. The Court will therefore deny summary judgment on Trombley's TILA claim and dismiss her other claims.

## BACKGROUND

## I.   PRELIMINARY CONTACTS WITH SOURCE LENDING

Trombley purchased her house in 2003. She decided to refinance her preexisting Federal Housing Administration ("FHA") home loan with SunTrust after Dave Kuntz with Source Lending Corporation ("Source Lending") contacted her in February 2008.[2] Trombley was interested in refinancing her loan in order to receive a lower interest rate. (*See* Aff. of Brent Lindahl, Ex. 1 (Dep. of Christine Trombley at 44), Nov. 2, 2011, Docket No. 48; Compl. ¶ 18.) Trombley sought a lower interest rate because, when Kuntz contacted her, her income was limited to approximately $2,525 per month.[3] (Decl. of Christine Trombley ¶ 2.)

---

[2] Trombley claims that Kuntz contacted her over the phone and identified himself as a mortgage broker working for "Lending Tree." (Decl. of Christine Trombley ¶¶ 3, Nov. 23, 2011, Docket No. 55.) Trombley further alleges that Kuntz told her that the loan he could offer her would lower her interest rate to 5.5%. (Compl. ¶ 18, July 23, 2010, Docket No. 1.)

[3] When Trombley first bought her home in 2003, she had an annual income of $70,000. (Decl. of Timothy Thompson, Ex. C (Dep. of Christine Trombley at 21-22), Nov. 23, 2011, Docket No. 56.) During the period of August 2007 to March 2008, her income dropped to

(Footnote continued on next page.)

On April 24, 2008, Kuntz came to Trombley's home, and Trombley signed several papers related to the proposed refinancing.  (Trombley Decl. ¶ 5.)  The documents she signed included a loan application, and none of the signed documents required information about her income.  (First Aff. of Jackie W. Ballos, Ex. E, Nov. 2, 2011, Docket No. 49.)[4]  Trombley claims that Kuntz simply told her where to sign each document and did not leave her with any copies of the paperwork.  (Trombley Decl. ¶ 5.)  It is unclear if Trombley received a "Truth in Lending Disclosure Statement" ("TIL") – a document that discloses certain critical loan terms – at this meeting.

Source Lending submitted Trombley's loan application package to SunTrust for funding, and SunTrust approved the application.  (*See* Lindahl Aff., Ex. 2 (Third Supp. Answer to Interrog. ¶ 13), Nov. 2, 2011, Docket No. 48; First Ballos Aff. ¶ 4, Ex. D, Ex. E.)

SunTrust alleges that it mailed Trombley preliminary loan disclosures on May 6, 2008, including a preliminary TIL.  (First Ballos Aff., Ex. H.)  SunTrust addressed the May 6 letter to "Christine Trombley" at "Pompano Drive" but did not include

_____

(Footnote continued.)

$36,000 per year, for a total of approximately $3,000 per month.  (*Id*. at 21.)  Her income then dropped again to $2,525 per month.  (Trombley Decl. ¶ 2.)

[4] A 5.75% interest rate was disclosed on this application, as well as on the Good Faith Estimate ("GFE") that Trombley signed that day, which is consistent with the final interest rate that Trombley received.  (First Ballos Aff., Exs. E, G.)  Trombley also signed a Borrower(s) Certificate of Reasonable Tangible Net Benefit of Refinance Loans form.  (*Id.*, Ex. L.)  In it, Trombley acknowledged that she had considered various factors, including the cost of the loan and the interest rate, and that she would benefit from the loan because of the "lower payment." (*Id.*)

Trombley's house number, making it a question of fact whether this letter and its enclosures reached Trombley.  (*See id.*)  Trombley claims that she does not remember receiving any documents related to her refinancing prior to closing.  (Trombley Decl. ¶¶ 6, 10-11.)

## II.   CLOSING

On May 23, 2008, Kuntz met with Trombley in her home to conduct the closing on the refinanced loan.  (Trombley Decl. ¶ 8.)  Trombley claims that Kuntz rushed her through the closing and did not explain the loan terms to her.  (Compl. ¶¶ 28-29.)

At the closing, Trombley executed a note and mortgage in favor of SunTrust. (First Ballos Aff., Ex. A; Trombley Dep. at 41.)  The principal amount of the loan was $165,445, payable in monthly installments over a thirty year term, at a fixed interest rate of 5.75%.  (First Ballos Aff., Ex. A; Trombley Dep. at 40.)  The FHA insured the loan. (First Ballos Aff., Ex. B; Trombley Dep. at 44.)  SunTrust underwrote and approved Trombley's loan under the FHA's "streamline refinance" program.  (Third Supp. Answer to Interrog. ¶ 18.)

Trombley received two TILs at the closing that contained inconsistent loan terms. (Trombley Decl. ¶ 10; First Ballos Aff. Ex. I, Ex. J.)  The first TIL dated April 24, 2008, was never signed and contained a checkmark in a small box at the bottom of the page indicating that it was an "estimate."  (First Ballos Aff., Ex. I; *see also* Trombley Decl. ¶¶ 10, 11.)  This TIL contained incorrect loan terms, including an annual percentage rate

("APR")[5] of 6.035%  – a rate lower than the imposed 6.307% APR.  (*See* First Ballos

Aff., Exs. I, J.)  The other, signed TIL included correct final loan terms and listed an

accurate APR of 6.307%.  (*Id.*, Ex. J.)

At the completion of the closing, Kuntz provided Trombley with a set of

documents, including the two TILs.  (Trombley Decl. ¶¶ 9-10.)  According to Trombley,

these were the only documents she had ever received with respect to the loan.  (*Id.* ¶ 9.)

## III.    ATTEMPT TO MODIFY LOAN

Trombley appears to have defaulted on her loan sometime in or after December

2009.  (Trombley Dep. at 134-37, 151; Third Supp. Answer to Interrog. ¶ 23.)  In early

2010, Trombley was informed that she might have rights to a loan modification under the

Home Affordable Mortgage Program ("HAMP").  (Trombley Decl. ¶ 14.)  She asked

SunTrust to consider her for a HAMP loan modification and submitted the appropriate

paperwork.  (*Id.*)  Trombley claims that she was not fully considered or offered a loan

modification under HAMP.  (*Id.* ¶ 16.)  On two occasions, however, SunTrust offered

Trombley a loan modification that was not under HAMP.  (Third Supp. Answer to

Interrog. ¶ 23; Trombley Decl. ¶ 15; First Ballos Aff., Ex. A, Ex. P.)

## IV.    ATTEMPT TO RESCIND MORTGAGE LOAN TRANSACTION

On March 2, 2010, after Trombley's default, Trombley's lawyer sent SunTrust a

letter stating that Trombley was rescinding her mortgage loan transaction because she did

---

[5] TILA defines "APR" as the "cost of your credit as a yearly rate."   12 C.F.R.
§ 226.18(e).

not receive accurate disclosures under TILA.  (Trombley Decl., Ex. B.)  The letter also

indicated that Trombley was prepared to discuss satisfactory ways that she could meet

her obligation to repay her loan.  (*Id.*)  Trombley admits she did not know then and does

not know now how she could be capable of meeting her tender obligation.  (Trombley

Dep. at 205-07.)  SunTrust responded by sending Trombley a letter on March 31, 2010,

rejecting her rescission request on the grounds that it was untimely.  (First Ballos Aff.,

Ex. S; Third Supp. Answer to Interrog. ¶ 15.)

## ANALYSIS

### I.      STANDARD OF REVIEW

SunTrust moves for summary judgment.  Summary judgment is appropriate where

there are no genuine issues of material fact and the moving party demonstrates that it is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it

might affect the outcome of the suit, and a dispute is genuine if the evidence is such that

it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary

judgment must view the facts in the light most favorable to the non-moving party and

must give that party the benefit of all reasonable inferences that can be drawn from those

facts.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).

## II.    MINNESOTA STATUTES, CHAPTER 58

Trombley first alleges that SunTrust failed to verify her ability to repay her loan as required by Minnesota Statutes, Chapter 58.   Chapter 58 prohibits residential mortgage originators or servicers from "mak[ing], provid[ing], or arrang[ing] for a residential mortgage loan without verifying the borrower's reasonable ability to pay" the principal, interest, real estate taxes, mortgage insurance premiums, and other payments associated with the loan.    Minn. Stat. § 58.13, subd. 1(a)(24).   Minn. Stat. § 58.18 establishes a private right of action for borrowers injured by a violation of Chapter 58.   To analyze Trombley's claim, the Court must first determine whether SunTrust can be held liable under Chapter 58 even though it is a subsidiary of a bank.   The Court will then decide whether SunTrust can be held liable under Chapter 58 even though it followed HUD criteria when assessing Trombley's ability to repay her loan.

### A.    Residential Mortgage Originator

SunTrust claims that it is exempt from liability under Chapter 58.   Chapter 58 imposes obligations upon "person[s] acting as a residential mortgage originator or servicer."   *Id.* § 58.13, subd. 1.  SunTrust seems to admit that it is a mortgage originator and servicer.[6]   SunTrust maintains, however, that it is exempt from the private right of

---

[6] Further, the Court finds that SunTrust Mortgage is a "mortgage originator or servicer"; in fact, it represents itself as one of the "top 10 mortgage originators and servicers in the U.S." *See* SunTrust Mortgage, *A Brief History*, http://www.stmcareers.com/about/abriefhistory.asp (last visited May 1, 2012), and SunTrust Mortgage, *A Profile of SunTrust Mortgage*, http://www.stmcareers.com/about/whoweare.asp (last visited May 1, 2012).

action because it is a "federal or state charted bank" that cannot be held liable under Chapter 58.  *See id.* § 58.18, subd. 4.

Chapter 58 does not provide a definition of bank, but other statutes shed light on the definition of this term.  In Minnesota Statutes, Chapter 47, a bank is defined as:

> a corporation under public control, having a place of business where credits are opened by the deposit or collection of money and currency, subject to be paid or remitted upon draft, check, or order, and where money is advanced, loaned on stocks, bonds, bullion, bills of exchange, and promissory notes, and where the same are received for discount or sale; and all persons and copartnerships, respectively, so operating, are bankers.

*Id.* § 47.01, subd. 2 (2008).  A state bank is defined under federal law as an entity "engaged in the business of receiving deposits . . . ." 12 U.S.C. § 1813(a).  Referencing these definitions, the Court finds that SunTrust is not a "bank" under Chapter 58 because it is not engaged in the business of receiving deposits.[7]

Furthermore, contrary to SunTrust's assertions, it is not a "bank" under Chapter 58 simply because it is a wholly-owned subsidiary of SunTrust Banks, Inc., a state chartered bank that takes deposits.  (First Ballos Aff. ¶ 3.)  The plain language of Chapter 58 exempts only banks, not subsidiaries of banks.  *Cf.* Minn. Stat. § 48.61, subd. 7 (referring to bank subsidiaries).

SunTrust also argues that it qualifies as a "bank" because the State of Minnesota has classified SunTrust as a "financial institution" and issued SunTrust a certificate of exemption from Minnesota's loan origination and servicing licensing requirements.  The

---

[7] SunTrust has not provided the Court with a proposed alternative definition of a bank.

Court finds, however, that Suntrust qualifies as a "financial institution" because it is a "subsidiary" of a financial institution, not because it is a bank.  *See id.* § 58.02, subd. 10; *id.* § 58.04, subd. 1(c)(2).[8]  The fact that SunTrust qualifies as a financial institution thus has no bearing on the motion at hand.  Accordingly, SunTrust may be held liable under Chapter 58.

### B.     HUD Criteria

Although SunTrust could be a proper defendant under Chapter 58, the Court finds that Trombley has nonetheless failed to state a cause of action against SunTrust under this Chapter.  Chapter 58 does not provide a cause of action against mortgage originators that "rely on  . . . criteria established by . . . the United States Department of Housing and Urban Development for . . . streamline loans" to establish a borrower's reasonable ability to repay a mortgage loan.  *Id.* § 48.13(24).   The parties appear to agree that SunTrust imposed HUD streamline refinance criteria when originating Trombley's loan and that Trombley satisfied these criteria.  (*See* Third Supp. Answer to Interrog. ¶ 18.)  Although the HUD criteria in place during Trombley's refinancing may have been deficient to verify her true ability to repay her loan, SunTrust is not liable under Chapter 58 because it followed this criteria.  *See* Minn. Stat. § 48.13(24).  Accordingly, the Court will dismiss Trombley's Chapter 58 claim.

_____

[8] Minn. Stat. § 58.02, subd. 10, states that a "'[f]inancial institution' means a **bank** [and] . . . [t]he term 'financial institution' also includes a **subsidiary** or operating subsidiary of a financial institution" (emphases added).

## III.    TRUTH IN LENDING ACT

SunTrust also moves for summary judgment on Trombley's claims that it violated TILA.  Trombley claims that, because she received unclear disclosures at closing, she is entitled to rescind her mortgage loan transaction and to receive statutory damages under TILA.  *See* 15 U.S.C. § 1640(a)(2)(A)(iv) (allowing recovery of statutory damages not less than $400 and up to $4,000 for violations of TILA); *id.* § 1635(b) (allowing recession of loan).  In analyzing Trombley's TILA claim, the Court must determine (1) if Trombley raised a fact question regarding whether SunTrust violated TILA's clear and conspicuous disclosure requirement; (2) if Trombley may be within TILA's statute of limitations to rescind her mortgage loan transaction; and (3) if Trombley failed to state a claim for rescission because she has not alleged her present ability to tender the loan proceeds.

### A.    Clear and Conspicuous Disclosures

The Court must first determine if a factual dispute exists regarding whether Trombley received clear and conspicuous disclosures required by TILA.  If Trombley received unclear disclosures, then she may be entitled to rescind her mortgage loan transaction and to receive statutory damages.  *See, e.g.*, 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23.

TILA's purposes are "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate

and unfair credit billing . . . practices." 15 U.S.C. § 1601(a).  In accordance with these purposes, TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms . . . ."  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  "[N]o disclosure may cause another disclosure to be obscured or made ambiguous." *Amparan v. Plaza Home Mortg.*, 678 F. Supp. 2d 961, 969 (N.D. Cal. 2008); *see also In re Buckles*, 189 B.R. 752, 760 (Bankr. D. Minn. 1995) ("The giving of two separate disclosure statements for a single loan transaction is a violation of the TILA's requirement of a single, comprehensible disclosure of the cost of credit.").[9]

Among the terms that creditors must clearly and conspicuously disclose are the APR, amount financed, and finance charges associated with a loan.  *See* 15 U.S.C. §§ 1635(a), 1638(a), 12 C.F.R. §§ 226.17-18.  TILA defines APR as the "cost of your credit as a yearly rate."  12 C.F.R. § 226.18(e).[10]  "The [APR] is one of the most important required disclosures because it requires lenders to express uniformly the cost of a credit transaction (interest) as an annual rate." *Sentinel Fed. Sav. and Loan Ass'n of Kansas City, Mo. v. Office of Thrift Supervision*,  946 F.2d 85, 88 (8th Cir. 1991).

---

[9] Even assuming that TILA does not require "perfect notice" of all terms, it does require "substantial, clear disclosure."  *See Peterson-Price v. U.S. Bank Nat'l Ass'n*, No. 09-495, 2010 WL 1782188, at *5 (D. Minn. May 4, 2010) (quoting *Smith v. Chapman*, 614 F.2d 968, 972 (5th Cir. 1980); *Santos-Rodriguez v. Doral Mortg. Corp.*, 485 F.3d 12, 16 (1st Cir. 2007)).

[10] The APR disclosed is considered accurate if it is not more than one-eighth of one percentage point above or below the actual APR.  15 U.S.C. § 1606(c); 12 C.F.R. § 226.22(a)(2). The APR in the "estimate" TIL provided at Trombley's closing was outside the one-eighth of one percent tolerance allowed by TILA and thus, if Trombley saw this inaccurate term and was confused by it, SunTrust may have violated the statute.  *See Rucker v. Sheehy Alexandria, Inc.*, 244 F. Supp. 2d 618, 623 (E.D. Va. 2003).

When determining whether the disclosures provided are clear and accurate, "alleged violations of TILA are subject to an objective standard of review. Courts have applied such an objective standard regardless of whether the borrower is a trained attorney or simply an individual who had a sudden need for additional funds." *Rand Corp. v. Moua*, 559 F.3d 842, 845-46 (8th Cir. 2009) (internal quotation marks omitted). The Court must determine, then, if there is a material question of fact regarding whether an average consumer in the borrower's position would have been confused by the disclosures provided. *See id.* at 847; *Peterson-Price*, 2010 WL 1782188, at *4.[11]

The Court finds that there is a material question of fact regarding whether SunTrust provided inconsistent disclosures at closing that confused Trombley about the APR associated with her loan. The fact that one of the TILs Trombley received at closing had a checkmark in a small box indicating that it was an "estimate" does not demand a contrary result. A jury could reasonably believe Trombley's contention that the "estimate" checkmark was not obvious and that the disclosure of conflicting TILs did not provide substantial, clear disclosure of material terms.[12] Trombley's argument may

---

[11] In some instances, a court will be able to determine as a matter of law whether a notice was clear and conspicuous. *See Rand Corp.*, 559 F.3d at 848. Here, however, there is a material question of fact regarding this issue.

[12] *See Peterson-Price*, 2010 WL 1782188, at *5 ("The Banks' argument that other documents given to Plaintiff at the closing clarify any uncertainty caused by the two seemingly inconsistent APR statements provided at the closing is not appropriately resolved on summary judgment."); *Quintero Family Trust v. OneWest Bank, F.S.B.*, No. 09-1561, 2010 WL 392312, at *3 n.4 (S.D. Cal. Jan. 27, 2010) (refusing to dismiss plaintiffs' claims where plaintiff may have been "provided with two contradictory disclosure statements within months of each other"); *Pulphus v. Sullivan*, No. 02-C-5794, 2003 WL 1964333, at *15 (N.D. Ill. Apr. 28, 2003)

(Footnote continued on next page.)

be particularly persuasive to the jury if it believes that Trombley did not receive any TILs before closing.   On the other hand, SunTrust claims that Trombley received estimate TILs before closing and that, even if Trombley did not receive an earlier TIL, the TILs provided at closing would not confuse the average consumer.   Because a jury could reasonably believe either SunTrust or Trombley's arguments, there is a fact question for the jury regarding when Trombley received TILs and whether those TILs she received clearly and conspicuously disclosed the APR.   Accordingly, Trombley has raised a genuine issue of material fact regarding her TILA claim.[13]

## B.      Statute of Limitations

The Court must next determine if Trombley's rescission request was untimely, having occurred more than three days after closing.   If a creditor violates TILA by failing to comply with TILA disclosure requirements, the time in which a consumer is entitled to rescind is extended from three days to three years.   15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).   In this case, the closing occurred May 23, 2008, and Trombley provided SunTrust with the notice of rescission on March 2, 2010, within the three year period. (*See* Trombley Decl., Ex. B.)   Because there is a fact question regarding whether

_____
(Footnote continued.)

("[Plaintiff's] allegation that she received two, contradictory TILA disclosures simultaneously is equivalent to alleging that she received none, a paradigmatic violation of TILA.").

[13] The Court declines to opine regarding whether Source Lending, who apparently created the "estimate" TIL provided at closing, was SunTrust's agent because there are insufficient facts in the record to decide this issue and because SunTrust stated at oral argument that it did not make a difference whether Source Lending was its agent.

SunTrust violated TILA's disclosure requirements and thus extended the statute of limitations, the Court will not dismiss Trombley's TILA claim on this ground.

### C.      Tender Obligation

Finally, the Court must determine if Trombley can state a claim for recession under TILA even though she may not have the present ability to tender the amount due under her home loan.  After exercising her right to rescind under TILA, a borrower must return any property received from the lender.  15 U.S.C. § 1635(b).  SunTrust argues that Trombley cannot bring a claim for its failure to rescind because Trombley does not allege in her complaint that she has the ability to tender the amount due under her home loan. The Court must therefore determine whether, in order to state a claim for rescission under TILA, Trombley must allege a present ability to tender in her complaint.

The plain terms of TILA do not require Trombley to tender payment before rescission.  In fact, "[n]ot one word in TILA requires a borrower to tender – or to have the ability to tender – before seeking rescission.  To the contrary, the plain language of TILA requires the lender to release its security interest and take other steps to effect rescission before the borrower is required to tender." *Tacheny v. M&I Marshall & Ilsley Bank*, No. 10-2067, 2011 WL 1657877, at *3 (D. Minn. Apr. 29, 2011).

Because TILA does not require the borrower to tender prior to rescission, the Court declines to demand tender at this time.  TILA provides the Court with some discretion to decide how the parties effect rescission.  *See* 15 U.S.C. §1635(b); *Coleman v. Crossroads Lending Group, Inc.*, No. 09-0221, 2010 WL 4676984, at *6-10 (D. Minn.

Nov. 9, 2010).[14]  "[P]laintiff's ability to tender, along with all of the other facts and circumstances of the case, will be relevant when the court determines – some months or years into the litigation – whether the plaintiff should be required to tender before the lender is required to release its security interest."  *See Tacheny*, 2011 WL 1657877, at *3. The Court declines to decide at this time whether it will require Trombley to tender in order to rescind her mortgage loan transaction, but rejects SunTrust's argument that Trombley must plead the ability to tender in order to survive summary judgment.

## IV.    FORECLOSURE PREREQUISITES

Trombley's final cause of action claims that SunTrust "failed to comply with foreclosure prerequisites" and violated its loss mitigation obligations by declining to consider Trombley for a loan modification under HAMP.  In her complaint, Trombley based her alleged right to a HAMP modification on statutes and regulations.  Trombley appears to have abandoned this theory, however, and now claims that that this cause of action stems from her contractual rights to be considered for a loan modification that SunTrust breached.  (*See* Trombley Decl. Ex. A, First Ballos Aff., Ex. A.)  The Court finds that Trombley may not base this cause of action on breach of contract because she has not pled in her complaint that SunTrust breached a contract.  *See Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (holding that the factual

---

[14] "If courts can readily alter the statutory scheme to protect lenders, then surely courts also have the authority to alter the statutory scheme to protect borrowers-who, after all, are the persons whom the statute is intended to protect."  *Coleman*, 2010 WL 4676984, at *7.

allegations in a complaint must state a claim to relief).   Accordingly, the Court will dismiss this claim.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment [Docket No. 46] is **GRANTED in part** and **DENIED in part** as follows:

1.      The motion is **GRANTED** with respect to Plaintiff's Count I (Avoidance of Contract/Fraud), Count II (Failure to Verify Reasonable Ability to Pay), Count III (Charging Fees for Services Not Provided), Count VI (RESPA Violations), and Count VII (Failure to Comply with Foreclosure Prerequisites).  Counts I, II, III, VI, and VII are **DISMISSED.**

2.      The motion is **DENIED** with respect to Plaintiff's Count IV (Failure to Clearly and Conspicuously Disclose Material Loan Terms) and Count V (Failure to Honor Plaintiff's Timely Recession).

DATED:  July 24, 2012                          _____
at Minneapolis, Minnesota.                          s/ John R. Tunheim
                                                     JOHN R. TUNHEIM
                                                  United States District Judge